**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SYED ABID IQBAL,

        Plaintiff,

vs.                                                  Case No. 3:11-cv-369-J-37JBT

FEDERAL BUREAU OF
INVESTIGATION, and FIVE
UNKNOWN AGENTS OF THE FBI,

        Defendants.

**ORDER**

This cause is before the Court on the following:

1. FBI's Motion to Dismiss and Memorandum in Support Thereof (Doc. No. 20), filed March 5, 2012;

2. Plaintiff's Response to Defendant's Motion to Dismiss and, in the alternative, Motion for Leave to File a Second Amended Complaint (Doc. No. 21), filed March 16, 2012;

3. Plaintiff's Motion Under Federal Rule 41(a)(2) Voluntary Dismissal of Claim Against FBI Monetary Damages Only (Doc. No. 27), filed April 13, 2012; and

4. FBI's Response to Plaintiff's Motion for Voluntary Dismissal of Claims (Doc. No. 28), filed April 27, 2012.

**BACKGROUND**

Plaintiff Syed Abid Iqbal brings this lawsuit against the Federal Bureau of Investigation and five unnamed FBI agents (the "John Doe Defendants"). In fourteen

separate counts, Iqbal claims the Defendants violated the Privacy Act; the Foreign Intelligence Surveillance Act; and various rights protected by the First, Fourth, Fifth, and Eighth Amendments to the U.S. Constitution.

As alleged by Iqbal, the facts of this case are as follows.  He approached the FBI in December 2008 to discuss his concerns about some of his "long-time friends."  (Doc. No. 18, ¶ 14.)  Thereafter, an FBI agent called Iqbal and asked him about an email received by the Transportation Security Administration ("TSA").  (*Id.* ¶ 15.)  That call was followed by another, in which the agent and Iqbal arranged an in-person meeting.  (*Id.* ¶ 16.)  Iqbal voluntarily met with two FBI agents.  (*Id.*)  At the meeting, the agents asked him to place a phone call which was recorded by the FBI.  (*Id.*)  Iqbal had a few unimportant calls with one of the agents after the meeting.  (*Id.* ¶ 17.)

In the midst of this, an FBI agent asked Iqbal to meet again.  (*Id.* ¶ 18.)  This time, Iqbal met with the agent and his supervisor.  (*Id.*)  The agents questioned Iqbal again about the TSA email and threatened to charge him with a crime.  (*Id.*)  The agents also asked him to take a polygraph, to which he agreed.  (*Id.*)

Iqbal contends that, during and after the polygraph, the agents demanded he admit to creating an email account and sending the TSA email.  (*Id.* ¶ 19.)  He alleges the agents told him he failed the polygraph and began shouting.  (*Id.* ¶ 20.)  While detained for several hours, agents yelled at him, made vulgar remarks about his family and religious beliefs, and tortured him.  (*Id.*)  He was eventually released (*id.*), but Iqbal asserts the FBI then turned his cell phone "into a transmitter to monitor, record, listen, watch and spy" on him (*id.* ¶ 22).  In subsequent interviews and calls, Iqbal alleges the agents continued to threaten him and subject him to embarrassment and humiliation.  (*Id.* ¶ 25.)

These actions had a "profoundly deleterious impact" on Iqbal's health.  (*Id.* ¶ 24.) He contends he has become suicidal, and as a result of this mistreatment, he can no longer work due to the associated stress.  (*Id.* ¶¶ 27-28.)

The FBI, the only Defendant against which service has been perfected, moved to dismiss the four claims brought against it.

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) provides a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alterations and internal quotations omitted).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Id.*

## DISCUSSION

Before discussing the arguments raised by the FBI, the Court addresses Plaintiff's use of a shotgun pleading, i.e., a failure to properly set out the allegations that relate to each of his claims.  Thereafter, the Court addresses the FBI's arguments as they relates to Iqbal's Privacy Act claims (Count I and Count X); his claims under the

Foreign Intelligence Surveillance Act; and his claims under Title 42 U.S.C. § 1985(3).

## Shotgun Pleading

As an initial matter, the Court notes that the Amended Complaint is an improper shotgun pleading. *See, e.g.*, *McMahon v. Cleveland Clinic Found. Police Dep't*, No. 10–14578, 2011 WL 4552308, at *2 (11th Cir. Oct. 4, 2011). A "shotgun pleading" is a pleading that "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). In other words, a shotgun pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Such pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The result of shotgun pleading is to foist upon the Court the onerous task of sifting through paragraph after paragraph of allegations to find the few which are relevant to each separate claim. *See, e.g.*, *Strategic Income Fund, L.L.C.*, 305 F.3d at 1295.

The U.S. Court of Appeals for the Eleventh Circuit finds pleadings of this sort "altogether unacceptable." Cramer v. State of Florida, 117 F.3d 1258, 1263 (11th Cir. 1997). The Eleventh Circuit has instructed this Court, when faced with the extreme burden of deciphering a shotgun pleading, to strike the pleading and require the plaintiff to replead to the extent possible under Federal Rule of Civil Procedure 11. *See id.*

The First Amended Complaint is a classic shotgun pleading. Each count

4

incorporates by reference each and every allegation contained in all preceding paragraphs.  This is not proper.  Only those allegations that are relevant to a claim may be incorporated by reference in a Count.  No other allegations should be referenced.

As such, all of Plaintiff's First Amendment Complaint is due to be dismissed for this reason alone.

### Counts I and X: Violations of the Privacy Act

In his first and tenth Counts, Plaintiff contends the FBI violated Sections 552a(e)(7) and 552a(g)(1)(D) of the Privacy Act, which is found in Title 5 of the U.S. Code.  Section 552a(e)(7) directs agencies to "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."  Section 552(g)(1)(D) is a "catchall" provision of the portion of the Privacy Act that authorizes civil suits against any agency which "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."[1]

The FBI moves to dismiss these claims.  As discussed in more detail below, the Court finds the FBI's motion well-taken and will dismiss Count I and Count X of the Amended Complaint with leave to amend.

First, the FBI argues that it is not a proper defendant for these claims.  It contends the U.S. Department of Justice, the executive-level federal agency of which the FBI is a component, is the proper defendant.  The private right of action created by

---

[1] As this provision expressly authorizes lawsuits against certain federal "agencies," the FBI's sovereign argument is not well taken.

the Privacy Act is specifically limited to civil actions against "agencies" of the United States Government.[2]  The term "agency" is defined much like a statutory set of maroushka dolls.  The definition set forth in the Privacy Act (5 U.S.C. § 552a(a)(1)) adopts the definition of that term used in the Freedom of Information Act (5 U.S.C. § 552(f)) which refers to, but does not incorporate, the definition of that term in the Administrative Procedure Act (5 U.S.C. § 551(1)).[3]  *See Dong v. Smithsonian Inst.*, 125 F.3d 877, 878-79 (D.C. Cir. 1997).  This statutory structure does not provide the clearest basis to identify what part of the federal government is an "agency" subject to the Privacy Act.  There is no controlling case in the Eleventh Circuit and, as the government notes in its Motion, even the judges of the U.S. District Court for the District of Columbia (i.e., the court with the most familiarity with theses statutes) disagree as to whether Privacy Act and Freedom of Information Act lawsuits may be brought only

---

[2]  The civil remedy provisions of the Privacy Act do not apply against individuals. *See Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003) (noting the private right of action created by the Privacy Act may be brought only against federal agencies).  Thus, Plaintiff cannot bring a Privacy Act claim against the John Doe Defendants.

[3]  Section 552a defines the term "agency" merely by referring to the definition found in "section 552(e) of this title."  Section 552(e), however, no longer defines the term agency.  The definitions set forth in that portion of the statutes have been moved to Section 552(f).  That section defines "agency" as "defined in section 551(1) of this title includ[ing] any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  Finally, Section 551(1) defines "agency" as meaning "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" except for "(A) the Congress; (B) the courts of the United States; (C) the governments of the territories or possessions of the United States; (D) the government of the District of Columbia; . . . (E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them; (F) courts martial and military commissions; (G) military authority exercised in the field in time of war or in occupied territory; or (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891-1902, and former section 1641(b)(2), of title 50, appendix."

6

against a federal executive-level "agency" or whether such suits may also be brought against the components of a federal agency. *See, e.g.*, *Mingo v. U.S. Dep't of Justice*, 793 F. Supp. 2d 447, 451 (D.D.C. 2011) (collecting cases).

This Court is not inclined to dismiss Count I and Count X just because the Plaintiff brought his claims against the FBI instead of the Department of Justice. The intent of the statutory scheme seems be that, to be an agency under the Privacy Act, a governmental agency must fit into one of the categories set forth in Section 552(f) or Section 551(1). *See, e.g.*, *Broaddrick v. Exec. Office of the Pres.*, 139 F. Supp. 2d 55, 59-60 (D.D.C. 2001). At the very least, the FBI would appear to be an "authority of the Government of the United States" under Section 551(1). Indeed, that definition controls "whether or not [the FBI] is within or subject to review by another agency," such as the Department of Justice. In addition, it is neither just nor equitable to dismiss this claim for failing to sue the correct government entity. To that end, rather than dismissing the claim, the Court will permit the Plaintiff to amend his complaint to add the U.S. Department of Justice as a defendant. In that way, there will be no question that the claim has been brought against the proper government defendant.

Second, the FBI argues that Iqbal has failed to state a claim under the Privacy Act. The Court agrees with the FBI that the Plaintiff has failed to state a claim, but not for reason advanced by the FBI. There are at least four causes of action that may be brought under the Privacy Act. The Court and the FBI interpret Iqbal's claims as being brought under the catchall remedy of the Privacy Act for the improper collection of data on how Plaintiff exercises his protected First Amendment rights. *See, e.g.*, *Albright v. United States*, 558 F. Supp. 260, 261 (D.D.C. 1983); *see also* 5 U.S.C. § 552a(g)(1)(D); *Doe v. Chao*, 540 U.S. 614, 619 (2004) (describing the Privacy Act's "catchall" remedy

for any violation having an adverse effect); *Clarkson v. IRS*, 678 F.2d 1368 (11th Cir. 1982).

Agencies subject to the Act may not maintain any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The Privacy Act provides further that, in suits brought under the catchall provision, if

> the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).

In view of this framework, the Court concludes the complaint must contain factual allegations that the Agency (1) maintained records which implicate an individual's First Amendment Rights that were (2) not expressly authorized by statute *or* consented to by the individual *or* pertinent to and within the scope of an authorized law enforcement activity. The complaint must also allege that the agency maintained such records (3) intentionally and willfully, and that (4) the individual who was the subject of the records was adversely affected and (5) sustained actual damages that were (6) caused by the agency's improper maintenance of such records.[4]

---

[4] The "adverse effect" requirement is distinct from the "actual damages" requirement. The "adverse effect" requirement is, in essence, a standing requirement. *Quinn v. Stone*, 978 F.2d 126, 135 (3d Cir. 1992) ("[T]he adverse effect requirement of

The FBI contends Iqbal has failed to allege that it maintained records that implicate activities protected by the First Amendment. This is a rather close call on the allegations of the complaint, which the Court construes in Iqbal's favor. The complaint alleges that the agents take notes to aid the creation of official reports, and that such notes are used "to help them later." This allegation is sufficient, the Court believes, to satisfy the requirement that the agency maintain a record, especially in view of the broad definition of record under the Act.[5] Those records must also implicate an individual's First Amendment rights. *See Clarkson*, 678 F.2d at 1374. Here, Iqbal alleges the agents were monitoring him during prayer and later commented on those prayers. That is sufficient (if barely so) to support an inference that the notes maintained by the FBI implicated Iqbal's exercise of his First Amendment rights.[6]

The allegations of the complaint make reasonably clear, however, that the agents questioned Iqbal in connection with a possible crime. The Plaintiff alleges that his meetings with the FBI involved agents questioning him with regard to an email sent to

---

(g)(1)(D) is, in effect, a standing requirement."). The actual damages requirement, on the other hand, is a barrier which must be overcome in order for a plaintiff to recover statutory damages. *FAA v. Cooper*, 132 S. Ct. 1441, 1450-52 (2012). For both requirements, a plaintiff must show a causal connection. The Court sets out this causation requirement separately; however, it recognizes the causation is a two-step inquiry linked to both the adversely effected requirement and the actual damages requirement. *See, e.g.*, *Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984).

[5] A record is defined by the Privacy Act as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." Id. § 552a(a)(4).

[6] Since the Court dismisses this Count for other reasons, Iqbal should clarify his allegations in any subsequent complaint as to what records he contends the FBI maintains and which implicate his First Amendment rights.

9

the TSA. While not entirely clear, the allegations state that the agents threatened to charge him with a crime in connection with the email. Thus it would seem, to the Court, that any records connected to the FBI's question would be pertinent to and within the scope of an authorized law enforcement activity and, therefore, exempt from Section 552a(e)(7).[7] The law enforcement exception permits an agency to maintain records containing protected information where such records are connected with "an investigation of past, present or anticipated violations of the statutes which the agency is authorized to enforce." [8] *Carkson*, 678 F.2d at 1375. Given that the claim must be dismissed for another reason, the Court will require the Plaintiff to clarify his allegations regarding the email, the agents' investigation regarding the email, and the purported crimes associated with the email.

The third pleading requirement is that the agency intentionally and willfully maintained the records. The complaint does not contain an allegation that the FBI did so intentionally and willfully. It does contain certain allegations that suggest a concerted effort by the FBI to obtain information regarding "ordinary citizens" and "Muslims based on their religion, race and/or ethnicity." This is not sufficient, however, to satisfy this requirement.[9]

---

[7] Iqbal does allege in a conclusory fashion that the records maintained by the FBI were neither pertinent to nor within the scope of any legitimate, authorized law enforcement activity. That conclusory allegation, however, conflicts with other more specific factual allegations of the complaint.

[8] The FBI is broadly authorized by numerous statutes, presidential executive orders, and directives from the attorney general to investigate federal (and in some cases state) crimes and threats to national security. See, e.g., 28 U.S.C. § 531 *et seq.*

[9] That is not to say the Plaintiff must do anything more than generally allege the FBI acted intentionally and willfully in accordance with Federal Rule of Civil Procedure 9(b).

The fifth and sixth requirements in the Court's formulation concern damages and causation. In *Doe v. Chao*, 540 U.S. 614 (2004), the Supreme Court held that the Privacy Act's remedial provision authorizes plaintiffs to recover a guaranteed minimum award of $1,000 for violations of the Act, but only if they prove at least some "actual damages." *Id.* at 620, 627. The Supreme Court has held further that "actual damages" means "special damages for proven pecuniary loss." *FAA v. Cooper*, 132 S. Ct. 1441, 1452 (2012). In other words, "Privacy Act victims, like victims of libel *per quod* or slander, are barred from any recovery unless they can first show actual--that is, pecuniary or material--harm. Upon showing some pecuniary harm, no matter how slight, they can recover the statutory minimum of $1,000, presumably for any unproven harm." *Id.* at 1451.

Here, while Iqbal contends he suffered severe mental and emotional distress as a result of his treatment by the FBI, those damages cannot be recovered under the Privacy Act.[10] *See Cooper*, 132 S. Ct. at 1456. The complaint must instead allege some pecuniary harm which came about as the result of the FBI's maintenance of the records. Because there are no such allegations, Iqbal has failed to state a claim.[11]

In view of Iqbal's failure to alleges facts in support of the third, fifth and sixth requirements of his Privacy Act claim, the Court finds that the claim in Count I of the

---

[10] This is unlike the "adverse effect" requirement, for which emotional trauma is sufficient. *See, e.g.*, *Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984) ("We agree with the appellants' argument that emotional trauma alone is sufficient to qualify as an 'adverse effect' under Section 552a(g)(1)(D) of the Act."). The Court finds that Iqbal has satisfied the adverse effect requirement and does not discuss it in detail.

[11] The Court need not, at this time, take a position on whether injunctive relief is available pursuant to the catchall provision of the Privacy Act because plaintiff has not shown he is entitled to any recovery. *See Clarkson v. IRS*, 678 F.2d 1368 (11th Cir. 1982).

complaint is due to be dismissed.

### Count II:  Violations of the Foreign Intelligence Surveillance Act

In Count II, the complaint alleges that the actions of the FBI and agents violated Title 50 U.S.C. § 1810, which is known as the Foreign Intelligence Surveillance Act (FISA).  The FBI moves to dismiss this claim because Iqbal failed to exhaust his administrative remedies prior to bringing suit.

FISA is a limited waiver of sovereign immunity, and it permits civil actions to be brought against the United States for willful violations of the Act.  18 U.S.C. § 2712.  To bring such a suit, the claimant must first present the claim "to the appropriate department or agency under the procedures of the Federal Tort Claims Act."  *Id.* § 2712(b)(1).  Under the Federal Tort Claims Act, a claimant who fails to file an administrative claim cannot seek redress in court.  *See Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008).  Put another way, the Federal Tort Claims Act divests this Court of subject matter jurisdiction over all claims that have not been presented in the first instance to the proper federal department.  *Id.*; *see also Orlando Helicopter Airways v. United States*, 75 F.3d 622 (1996).

In the complaint in this case, Iqbal fails to allege his claim was submitted to the FBI or an "appropriate department or agency."  Nor does he allege he had exhausted his administrative remedies in a more general fashion.  In fact, in a subsequent filing, Iqbal admits he did not present his claim prior to filing suit.  Therefore, given his failure to administratively exhaust his claim, the Court finds Count II is due to be dismissed with prejudice.[12]

---

[12]   Although the Court intends to grant leave for Plaintiff to file an amended complaint, he will not be permitted to re-assert his FISA claim.

<u>Count III: 42 U.S.C. § 1985(3)</u>

In Count III, Plaintiff alleges the FBI's conduct violated his Fifth Amendment right to equal protection and those rights protected by the Fourteenth Amendment's privileges or immunities clause or the similar clause found in Article IV. The FBI contends that this claim should be dismissed because (1) a federal agency is not a "person" within the meaning of Title 42 U.S.C. § 1985, and (2) it is barred by the doctrine of sovereign immunity.

The FBI is correct in contending that Iqbal's cannot bring his Section 1985 claim against it. The United States has not consented to suit under the civil rights statutes, which include Section 1985. *Unimex, Inc. v. U.S. Dept. of Housing & Urban Dev.*, 594 F.2d 1060,1061(5th Cir. 1979).[13] Thus, the claims contained in Count III must be dismissed with prejudice.[14]

## CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. FBI's Motion to Dismiss (Doc. No. 20) is **GRANTED**. All of Plaintiff's claims are dismissed without prejudice except for those claims in Count II and Count III, which are dismissed with prejudice.

2. Plaintiff may file an amended complaint that consistent with this Order on or before July 6, 2012.

---

[13] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[14] The Court does not construe the remaining counts to be brought against the FBI. Nevertheless, to the extent Plaintiff is attempting to bring such claims against the FBI, they too are barred by sovereign immunity. *See, e.g., Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir. 1983) (holding sovereign immunity barred the plaintiff's *Bivens*-like claims).

3. Plaintiff's Motion at docket number 27 is **DENIED AS MOOT**.

4. The pretrial hearing and trial dates in this case are vacated.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on June 21, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record