# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

SYED ABID IQBAL,

        Plaintiff,

v.                                   Case No. 3:11-cv-369-J-37JBT

DEPARTMENT OF JUSTICE; NESTOR
DUARTE; JASON C. SKINNER; BRETT
A. EUBANK; TERRY M. WETMORE;
PAXTON K. STELLY; JOHN DOE 1;
JOHN DOE 2–14; and UNITED
STATES,

        Defendants.

_____

## ORDER

This cause is before the Court on the following:

1.     Third Amended Complaint (Doc. 68), filed December 27, 2012;

2.     DOJ's and United States' Motion to Dismiss Plaintiff's Third Amended Complaint and Memorandum in Support Thereof (Doc. 73), filed January 18, 2013; and

3.     Response to Defendant Motion to Dismiss (Doc 73) and Memorandum in Support Thereof (Doc. 76), filed January 30, 2013.

Upon consideration, the Court finds that the motion to dismiss is due to be granted for the reasons set forth below.

## BACKGROUND

Plaintiff, proceeding *pro se*, brings this Third Amended Complaint against: (1) the United States of America ("USA") and the Department of Justice ("DOJ") (collectively,

the "Government Defendants"); and (2) five agents of the Federal Bureau of Investigation—Nestor Duarte, Jason C. Skinner, Brett A. Eubank, Terry Wetmore, and Paxton K. Stelly (collectively, the "FBI Defendants"). (Doc. 68.) Plaintiff sets forth the following counts.

| Count(s) | Claim(s) | Defendant(s) |
|---|---|---|
| One | Privacy Act Violations, 5 U.S.C. § 552a(e)(7) & (g)(1)(D) | DOJ |
| Two | Privacy Act Violations, 5 U.S.C. § 552a(e)(5) & (g)(1)(C) | DOJ |
| Three & Four | Administrative Procedure Act, 5 U.S.C. §§ 701–706 | DOJ |
| Five | Foreign Intelligence Surveillance Act Violations, 50 U.S.C. § 1810 | FBI Defendants |
| Six | Excessive Force (*Bivens* Claims) | FBI Defendants |
| Seven | Equal Protection (*Bivens* Claims) | FBI Defendants |
| Eight | Unreasonable Search (*Bivens* Claims) | FBI Defendants |
| Nine | Substantive Due Process (*Bivens* Claims) | FBI Defendants |
| Ten | Federal Tort Claims Act (Invasion of Privacy), 28 U.S.C. §§ 1346(b) & 2671 | USA |
| Eleven | Federal Tort Claims Act (Intentional Infliction of Emotional Distress), 28 U.S.C. §§ 1346(b) & 2671 | USA |

Plaintiff seeks "declaratory relief, injunctive relief and monetary damages" for "race and or religion and or ethnic background and or national origin based discrimination." (*Id.* ¶ 1.) Although the complaint is difficult to follow, the Court has identified the following pertinent factual allegations.[1]

---

[1] The following factual allegations are accepted as true for the purpose of considering the instant motion and are construed in the light most favorable to Plaintiff.

Plaintiff's first contact with the FBI was on December 2, 2008, when he went to its Jacksonville office to seek help concerning "his friends and acquaintances," where he met with agents Eubank and Meyer. (*Id.* ¶ 7.) The next day, Eubank called Plaintiff asking about an email to the Transportation Security Administration ("TSA") and about Plaintiff's email addresses. (*Id.* ¶ 10.)

On December 5, 2008, agent Skinner asked Plaintiff to come to the FBI office again. (Doc. 65, ¶ 11.) He met with Meyer and Skinner, who asked him a "few general questions about [his] personal and family background." (*Id.*) Plaintiff agreed to Meyer's and Skinner's request to "make a phone call," which was recorded. (*Id.*) Over the next few days, "Skinner and Plaintiff spoke [a] few times over the phone" concerning "phone calls Plaintiff has made or received and things he has heard." (*Id.* ¶ 12.)

On December 7, 2008, Plaintiff again agreed to Skinner's request to meet. (Doc. 68, ¶ 13.) Plaintiff went to the office and met with agent Stelly, who asked Plaintiff "about an email to the TSA [and] suggested [that Plaintiff] might have sent it from" a hotel at which he had stayed in Atlanta. (*Id.*) Stelly threatened to charge Plaintiff with a criminal offense if Plaintiff did "not agree with him." (*Id.*) Skinner then asked Plaintiff to take a polygraph test "to confirm ownership of [his] email address or tracking any email or web posting." (*Id.* ¶ 14.) Plaintiff was told that if he admitted to creating a certain email account and sending an email to the TSA, he would "not have to go through anything." (*Id.* ¶ 16.)

Plaintiff did not consent to any questioning. (*Id.* ¶ 15.) Nevertheless, agent Wetmore administered a polygraph test on Plaintiff. (*Id.* ¶¶ 16–17.) During the polygraph, Wetmore asked Plaintiff "questions about an email to [the] TSA." (*Id.* ¶ 16.)

*See Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006).

Plaintiff asked to leave after the polygraph, but Wetmore "lied that Plaintiff failed [the polygraph] and [told Plaintiff that] he should agree about creating an email address and posting on [the] TSA website after faking an IP address." (*Id.* ¶ 18.)

Wetmore then "interrogated" Plaintiff for "over six hours" in the presence of Eubank, Stelly, and Skinner. (*Id.* ¶¶ 19–25, 27.) During the interrogation, Wetmore yelled at Plaintiff and subjected him to an "enhanced interrogation technique known as stress position and submission position." (*Id.* ¶ 19.) Wetmore also: (1) made graphic sexual remarks "towards the women in [his] family including [his] disabled wife" (*id.* ¶¶ 20, 22); (2) taunted Plaintiff for being a "[b]ad Muslim" (*id.*); (3) threatened to charge Plaintiff with a criminal offense (*id.*); (4) "flash[ed]" emails and other documents in Plaintiff's face (*id.* ¶ 24); and (5) refused "to end the interrogation when asked" (*id.* ¶ 21). Plaintiff claims that he was in pain, "was losing consciousness" during the interrogation, and was "unable to understand [his] involvement in sending that email or [its] specific contents." (*Id.* ¶ 23.)

Wetmore allegedly obtained the following information from Plaintiff during the interrogation: (1) the number of times that Plaintiff prays; (2) the number of times that Plaintiff has consumed alcohol; (3) the number of times that Plaintiff has had sex; (4) the number of times that Plaintiff's wife and other women in his family have had sex; (5) Plaintiff's relationship with his stepchildren; (6) his political thoughts; (7) his trips to different parts of the country; and (8) phone calls to his family members. (*Id.* ¶ 26.) Plaintiff alleges that such information "was initially collected in the form of hand written notes and audio/video" and was thereafter maintained by the FBI. (*Id.* ¶ 27.)

On February 10, 2009, Eubank asked Plaintiff to come into the office again, and Plaintiff complied. (*Id.* ¶ 32.) During the meeting, Eubank and Skinner threatened to

"charg[e] Plaintiff for committing many different crimes" and to take "away Plaintiff's U.S. citizenship." (*Id.* ¶¶ 32–33.) Eubank and Skinner also made "racist statements" and "threats that Plaintiff will not have to worry about being . . . [hit by a] car if Plaintiff complies with their demands." (*Id.* ¶¶ 34–35, 44.) Plaintiff complained to Eubank and Skinner of mental and physical pain "because of [their] earlier treatment" of him and the FBI's maintenance of "incorrect information." (*Id.* ¶ 36.) However, Eubank and Skinner "laughed off" Plaintiff's complaint. (*Id.*) On February 11, 2009, Eubank again called Plaintiff and threatened that he would "not be able to work" and would not be left alone. (*Id.* ¶ 37.)

Beginning around the time of the interrogation through January 2011, the FBI allegedly used surveillance to monitor Plaintiff in his home, including a recording of Plaintiff in prayer on February 8, 2009. (*Id.* ¶¶ 31, 39–40.) According to Plaintiff, his phone was also used to record him. (*Id.* ¶ 41.) The information collected during this surveillance included the "structure" of Plaintiff's house, "business and personal conversations, text messages . . . , travel information, family issues, and extremely private conversations of husband and wife." (*Id.* ¶ 40.)

Plaintiff alleges that he "was fully cooperative," provided "no resistance," and "offered to hand over the computer, phone and any other information voluntarily . . . ." (*Id.* ¶ 52.) Plaintiff denies that he committed any crimes or was charged with anything. (*Id.*) He claims that he suffered physically, mentally, and financially as a result of Defendants' actions. (*Id.* ¶¶ 46–47, 50.) He alleges that he was suicidal, lost weight, suffered panic attacks, and could not "sit straight because of constant back pain." (*Id.* ¶ 46.) Plaintiff had to file for bankruptcy. (*Id.* ¶ 47.) He further alleges that he made "requests under FOIA to release" his file, but the requests were largely denied. (*Id.*

¶ 48.) Finally, Plaintiff learned that his name was "added to [the] Government Watch list on April 28, 2011."

In response to these allegations in the Third Amended Complaint, the Government Defendants seek dismissal of the claims against them (Counts One, Two, Three, Four, Ten, and Eleven) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).[2] (Doc. 73.) Plaintiff opposed. (Doc. 76.) This matter is now ripe for the Court's consideration.

## STANDARDS

### I.    Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

---

[2] What is entitled the Third Amended Complaint is actually the fifth one. Despite numerous opportunities and warnings, Plaintiff has again submitted a shotgun pleading. (Docs. 1, 14, 18, 45, 68.) Nonetheless, the Court will consider the sufficiency of the allegations.

## II.    Rule 12(b)(1)

If a plaintiff fails to sufficiently allege the basis for the Court's subject-matter jurisdiction over a claim, then the Court must dismiss the claim under Rule 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994). A defendant may make a facial challenge to the sufficiency of a pleading's jurisdictional allegations, which is resolved on the basis of the complaint. *See Koury v. Sec'y, Dep't of Navy*, 488 F. App'x 355, 356 (11th Cir. 2012). On a factual challenge to subject-matter jurisdiction, the court "may consider matters outside the pleadings and is free to weigh the evidence concerning jurisdiction so long as the issues do not implicate the merits of plaintiff's action." *Gabriel v. United States*, No. 3:06-cv-917, 2009 WL 22289, at *2 (M.D. Fla. Jan. 2, 2009).

## DISCUSSION

## I.    Privacy Act (Counts One & Two)

The Privacy Act requires agencies such as the DOJ to maintain their "system of records" concerning individuals "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual." 5 U.S.C. § 552a(e)(5). Agencies are prohibited from maintaining records "describing how any individual exercises rights guaranteed by the First Amendment." *Id.* § 552a(e)(7); *see also Clarkson v. IRS*, 678 F.2d 1368, 1373–75 (11th Cir. 1982). "The prohibition on maintaining First Amendment-related records . . . does not apply when those records are 'pertinent to and within the scope of an authorized law enforcement activity.'" *Bassiouni v. FBI*, 436 F.3d 712, 714 (7th Cir. 2006) (quoting 5 U.S.C. § 552a(e)(5)); *see also Reeves v. Fed. Bureau of Prisons*, 885 F. Supp. 2d 384, 87–88 (D.D.C. 2012) (dismissing claims based on records exemption).

An individual may request injunctive relief in the form of amendment or correction of his records. 5 U.S.C. § 552a(d)(2); *see also Arnold v. U.S. Secret Serv.*, 524 F. Supp. 2d 65, 66 (D.D.C. 2007). An individual may also seek monetary damages, costs, and attorney's fees when an agency's intentional or willful violation of the Privacy Act causes "actual damages." 5 U.S.C. § 552a(g)(4); *see also Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660–61 (D.C. Cir. 1996); *Doe v. FBI*, 936 F.2d 1346, 1350 (D.C. Cir. 1991); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310–12 (D.C. Cir. 1992).

### A.    Collection & Maintenance of Records (Count One)

In Count One, Plaintiff alleges that the DOJ "collected and [is] still maintaining records describing" how Plaintiff performs prayers, in violation of the Privacy Act. (Doc. 68, ¶¶ 63–69.) Plaintiff, who is seeking only monetary damages under Count One, must allege sufficient facts to permit a plausible inference that: (1) the agency violated subsection 552a(e)(7) by maintaining a record describing how Plaintiff exercises rights guaranteed by the First Amendment; (2) such record was collected or maintained outside the scope of an authorized law enforcement activity; (3) the agency's violation was willful or intentional and adversely affected Plaintiff; and (4) Plaintiff suffered actual damages. *See* 5 U.S.C. § 552a(e)(7) & (g)(4); *see also Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1381 (11th Cir. 2010).

First, the Government Defendants argue that Plaintiff has not "alleged that the FBI maintains records that describe how he exercises rights guaranteed by the First Amendment." (Doc. 73, pp. 9–10 (citing *Boyd v. Sec'y of Navy*, 709 F.2d 684, 687 (11th Cir. 1983).) In a prior Order, this Court determined that Plaintiff has met this threshold (if only barely). (Doc. 41, p. 8.) The DOJ has not persuaded the Court that reconsideration of this finding is warranted.

Second, the Government Defendants argue that Plaintiff has not alleged that the FBI collected and maintained the records outside the scope of an authorized law enforcement activity.[3] (Doc. 73, pp. 10–12.) According to the DOJ, the allegations in the Third Amended Complaint make clear that "any records connected to these incidents would be pertinent to and within the scope of an authorized law enforcement activity—namely, investigating a potential threat to national security." (*Id.* at 11–12.) Giving Plaintiff's *pro se* pleading every benefit of the doubt, the Court rejects the DOJ's argument. (*See* Doc. 41, p. 10 (requiring Plaintiff to clarify his allegations concerning the criminal investigation).) Notably, Plaintiff now alleges that he committed no crimes and was never indicted or charged with any crimes. (Doc. 68, ¶ 52.) While the DOJ points to a reference in the Third Amended Complaint (Doc. 73, p. 11) regarding a threat to charge Plaintiff with a violation of 18 U.S.C. § 1001 (regarding fraud and false statements), it is unclear how records of Plaintiff's religious practices might relate to such an offense. While any surveillance and investigation of Plaintiff may very well have been pursuant to an authorized law enforcement activity, the Court cannot make that determination based on the new allegations in the Third Amended Complaint. Further, construing the allegations in Plaintiff's favor, it is fair to infer that this threat was not genuine but rather was an attempt to intimidate Plaintiff. Thus, Plaintiff has sufficiently alleged this element.

Third, the Government Defendants argue (Doc. 73, pp. 12–13) that Plaintiff has

---

[3] "Authorized law enforcement activity" is not defined by the Privacy Act; however, the U.S. Court of Appeals for the Eleventh Circuit has held that it must be connected to an "investigation of past, present or anticipated violations of that statutes which [the defendant] is authorized to enforce." *Clarkson*, 678 F.2d at 1375 (remanding case to district court where record did not "reveal either the purpose of the surveillance activities or the extent to which records of political speeches [were] maintained by the IRS").

not alleged facts sufficient to infer that the DOJ "acted intentionally or willfully" in collecting or maintaining the prohibited records. *See White v. Office of Pers. Mgmt.*, 840 F.2d 85, 87 (D.C. Cir. 1988) (avoiding dismissal of Privacy Act claim requires factual allegations to support an inference that the defendant's conduct was willful or intentional). However, the Court previously held that Plaintiff could satisfy his burden to allege intentional and willful conduct by making allegations consistent with Rule 9(b). (Doc. 41, p. 10 n.9.) In his Third Amended Complaint, Plaintiff has sufficiently met this standard, and the DOJ has not persuaded the Court that its earlier ruling was incorrect.

Finally, the Government Defendants argue that Plaintiff has not alleged sufficient facts concerning causation or actual damages. (Doc. 73, pp. 13–15.) On this last point, the Court agrees with Defendants. Plaintiff must allege that the Privacy Act violation resulted in an "adverse effect" on him which caused him "actual damages." *Doe v. Chao*, 540 U.S. 614, 620–27 (2004); *Doe v. DOJ*, 660 F. Supp. 2d 31, 49 (D.D.C. 2009) (dismissing claim based on self-serving, unsupported allegations of damage to the plaintiff's career and professional reputation). While Plaintiff has added an allegation that the DOJ placed him on a government watch list in 2011, Plaintiff has not indicated that he suffered any pecuniary loss as a result. *See Fanin v. U.S. Dep't of Veteran Affairs*, 572 F.3d 868, 872–75 (11th Cir. 2009) (holding that Privacy Act claims fail absent pecuniary loss). Nor has Plaintiff alleged any facts permitting a reasonable inference that the alleged Privacy Act violation caused him to be put on the watch list. The same is true of Plaintiff's allegations concerning his 2009 bankruptcy and lost wages. The Court simply cannot plausibly infer any causal link between the alleged subsection 552a(e)(7) violation and Plaintiff's bankruptcy. Accordingly, Count One of the Third Amended Complaint is due to be dismissed.

## B.    Failure to Correct Records (Count Two)

Count Two is premised on the Government Defendants' alleged failure to correct "records about Plaintiff['s] ownership of an e-mail address, ownership and use of [an] IP address and it's [sic] own website visit log records," in violation of 5 U.S.C. § 552a(e)(5) and (g)(1)(c). Plaintiff, who is also seeking only monetary damages under Count Two, must allege facts sufficient to permit a plausible inference that: (1) the agency violated subsection 552a(e)(5) by failing to maintain records concerning Plaintiff with "accuracy, relevance, timeliness, and completeness" necessary for fair determinations; (2) such improperly maintained records unfairly influenced an adverse "determination" by the agency concerning Plaintiff; (3) Plaintiff suffered "actual damages" as a result the records violation; and (4) the agency's violation was willful or intentional. 5 U.S.C. § 552a(e)(5) & (g)(4); *see also Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1006 (11th Cir. 2010).

Like Count One, Count Two does not set forth sufficient facts concerning causation and actual damages. Again, Plaintiff has included an allegation that he suffered pecuniary loss when he was unable to work and that he ultimately filed for bankruptcy; however, Plaintiff has not plausibly tied these alleged damages to the purported records violation. Rather, the Third Amended Complaint actually indicates that any injury and damages suffered by Plaintiff resulted from allegedly improper interrogation techniques rather than from a records violation under the Privacy Act. (*See* Doc. 76, pp. 10–11.) Accordingly, Count Two of the Third Amended Complaint is also due to be dismissed.

## II.    Administrative Procedure Act (Counts Three & Four)

Counts Three and Four are brought under the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 701–06. (Doc. 68, pp. 19–21.) The APA provides a framework for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. "'Agency action' includes the whole or part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

The Government Defendants argue that the APA is inapplicable because the Third Amended Complaint includes no factual allegations concerning a reviewable agency action. (Doc. 73, p. 18.) The Court agrees. Count Three is largely indecipherable and does not attempt to identify any agency action. (Doc. 68, p. 20.) Count Four is similarly incoherent; however, it does reference the "agency action" of "intercepting communication, conducting electronic surveillance, and subsequently using and keeping this unlawfully collected information . . . ." (*Id.* at 21.) Nevertheless, such non-final "agency action" is not reviewable under the APA. *See Jallali v. Sec'y, U.S. Dep't of Educ.*, 437 F. App'x 862, 864 (11th Cir. 2011) (affirming motion to dismiss where no reviewable agency action was alleged); *see also Harbert v. United States*, 206 F. App'x 903, 908–09 (11th Cir. 2009). Accordingly, Counts Three and Four of the Third Amended Complaint are due to be dismissed.

## III.    Federal Tort Claims Act (Counts Ten & Eleven)

Counts Ten and Eleven are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* "The FTCA provides a limited waiver of the United States' sovereign immunity for tort claims." *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006). Specifically, sovereign immunity is waived for claims against the United States arising from state law torts committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). The elements of a FTCA claim

are that a plaintiff must assert a claim against the United States: (1) "for money damages"; (2) "for injury or loss of property, or personal injury or death"; (3) "caused by the negligent or wrongful act or omission of any employee of the Government"; (4) "while acting within the scope of his office or employment"; and (5) "under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place[4] where the act or omission occurred." *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (citing 28 U.S.C. § 1346(b)).

"A federal court may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency." *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994). The claim must be presented "within two years after such claim accrues.'" *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013) (citing 28 U.S.C. § 2401(b)). "If the tort claim is not properly presented within the time period, it shall be forever barred." *Id.* (citation and internal quotation marks omitted). Here, the Government Defendants have offered convincing evidence that Plaintiff did not file his written administrative claim until April 10, 2012.[5] (Doc. 73, pp. 19–20; Doc. 73-2.) Accordingly, this Court agrees with Defendants that it may exercise subject-matter jurisdiction only over claims that are based on negligent or wrongful acts or omissions that occurred after the accrual date of April 10, 2010.

## A. Invasion of Privacy (Count Ten)

The Government Defendants argue that the facts alleged in the Third Amended

---

[4] Here, Florida is alleged to be the place where the act or omission occurred; accordingly, Florida law applies. *See Meyer*, 510 U.S. at 478.

[5] Plaintiff alleges that his administrative claim was denied on September 28, 2012. (Doc. 68, ¶¶ 104, 108.)

Complaint concerning conduct after April 10, 2010, are too conclusory to permit a reasonable inference that the United States is liable for invasion of privacy. (Doc. 73, p. 24.) The Court agrees.

In support of his invasion of privacy claim, Plaintiff alleges that "Defendant conduct[ed] audio and video surveillance of Plaintiff in situations in which Plaintiff had reasonable expectations of privacy, [which] constitutes intrusion into a private place including his home in a manner highly offensive to a reasonable person. Such intrusions upon seclusion under Florida provide this cause of action." (Doc. 68, ¶ 103.) These allegations are plainly conclusory. Further, the only specific instance of surveillance to which Plaintiff points occurred prior to the relevant date, on February 8, 2009. (*Id.* ¶¶ 31, 39–41.) Thus, that allegation is irrelevant to Plaintiff's FTCA claim. *See Motta ex rel. A.M.*, 717 F.3d at 843. Given its conclusory nature, Count Ten is due to be dismissed.

### B.    Intentional Infliction of Emotional Distress (Count Eleven)

The Government Defendants argue that the facts alleged in the Third Amended Complaint concerning conduct after April 10, 2010, are insufficient to permit a reasonable inference that the United States is liable for intentional infliction of emotional distress. (Doc. 73, pp. 29–33.) The elements of a claim for intentional infliction of emotional distress are: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). In support of their argument, the Government Defendants point to *Infante v. Whidden*, No. 2:12-cv-41-Ftm-29SPC, 2012 WL 6699135, at *6 (M.D. Fla. Dec. 26, 2012), which Plaintiff concedes is similar to the instant case (Doc. 76, pp. 16–17). The *Infante* court dismissed an intentional infliction of emotional distress claim where the

allegations were that law enforcement arrested the plaintiffs "pursuant to an unlawful warrant based on fabricated evidence." *Infante*, 2012 WL 6699135, at *6.

Here, Plaintiff does not even allege that he was arrested; rather, he was merely the subject of surveillance after April 10, 2010, and placed on a watch list. (Doc. 68, ¶¶ 105–07.) As a matter of law, such allegations are insufficient to establish a claim of intentional infliction of emotional distress. *See Infante*, 2012 WL 6699135, at *6; *see also McLeod v. Wal-Mart Stores, Inc.*, 515 F. App'x 806, 809 (11th Cir. 2013) (affirming dismissal of intentional infliction of emotional distress claim based on employer's surveillance of the plaintiff); *In re Protos*, No. 02-74770-MHM, 2005 WL 6491916, at *3– 4 (Bankr. N.D. Ga. Jan. 28, 2005) (dismissing intentional infliction of emotional distress claim based on allegations of "covert surveillance" of the plaintiff). Therefore, Count Eleven is due to be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. DOJ's and United States' Motion to Dismiss Plaintiff's Third Amended Complaint and Memorandum in Support Thereof (Doc. 73) is **GRANTED**.

2. Counts One, Two, Three, Four, Ten, and Eleven of the Third Amended Complaint (Doc. 68) are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on September 26, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record