# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

SYED ABID IQBAL,

            Plaintiff,

v.                                  Case No. 3:11-cv-369-J-37JBT

DEPARTMENT OF JUSTICE; NESTOR
DUARTE; JASON C. SKINNER; BRETT
A. EUBANK; TERRY M. WETMORE;
PAXTON K. STELLY; JOHN DOE 1;
JOHN DOE 2–14; and UNITED
STATES OF AMERICA,

            Defendants.

_____

## ORDER

    This cause is before the Court on the following:

1.    Plaintiff's Third Amended Complaint (Doc. 68), filed December 27, 2012;

2.    Plaintiff's Opposed Motion for Relief Under Rule 60 and Motion for Sanctions Rule 37 and Memorandum in Support Thereof (Doc. 79), filed March 1, 2013;

3.    Individual Defendants' Dispositive Motion to Dismiss Plaintiff's Third Amended Complaint and Memorandum in Support Thereof (Doc. 89), filed May 1, 2013; and

4.    Plaintiff's Response to Individual Defendants['] Motion to Dismiss Doc[.] 89 and Memorandum in Support Thereof (Doc. 96), filed June 18,  2013.

Upon consideration, the Court finds that the Defendants' motion to dismiss (Doc. 89) is due to be granted in part and Plaintiff's motion for Rule 60 relief and sanctions (Doc. 79) is due to be denied.

## BACKGROUND[1]

Following the Court's dismissal of the claims against the U.S. Department of Justice (*see* Doc. 110), five counts remain in Plaintiff's Third Amended Complaint (Doc. 68). Each count is directed at four individual FBI agents[2] ("Defendants"), from whom Plaintiff seeks monetary relief for violations of his Constitutional rights. (*See id.* ¶¶ 83–100.) The factual allegations relevant to the individual Defendants are as follows:

Plaintiff voluntarily approached the FBI on December 2, 2008, seeking help regarding his "concerns about his friends and acquaintances." (*Id.* ¶ 7.) Although Plaintiff did not know it at the time, the FBI believed that Plaintiff's concerns were related to an ongoing investigation into a "planned attack," the details of which are unclear.[3] (*See id.* ¶ 8.) Agents Eubank and Meyer met with Plaintiff at the FBI office in Jacksonville, had him write down his concerns, and then released him. (*Id.* ¶ 7.)

Beginning December 3, 2008, Plaintiff spoke with Agents Eubank, Meyer, and Skinner several more times, both over the phone and in person. (*See id.* ¶¶ 10–12.) The agents questioned Plaintiff about his personal background, but they were also concerned

---

[1] The following factual allegations are drawn from Plaintiff's Third Amended Complaint (Doc. 68) and are accepted as true for the purposes of ruling on Defendants' Motion to Dismiss (Doc. 89). *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court does not make findings of fact at this time.

[2] Plaintiff sues Defendants Skinner, Eubank, Wetmore, and Stelly in their individual capacities. (*See* Doc. 96, p. 4.) Although the Third Amended Complaint also lists Agent Nestor Duarte as a Defendant, Plaintiff raises no factual allegations involving Agent Duarte and has subsequently clarified that he intended to sue Agent Duarte in his official capacity as a nominal defendant in his suit against the United States. (*See id.*) As the Court has already dismissed the claims against the United States (*see* Doc. 110), all remaining claims against Agent Duarte are due to be dismissed.

[3] Plaintiff alleges that the details of his concerns were known to the FBI prior to his December 2, 2008, statement, and that the investigation into the attack was closed "without any charges filed in relation to this investigation." (Doc. 68, ¶¶ 8, 28.)

with several suspicious communications they believed him to have made—particularly a November 30, 2008, email that had been sent to the Transportation Security Administration ("TSA").[4] (*See id.*)

On December 7, 2008, Agent Skinner called Plaintiff and asked him to come into the FBI's Jacksonville office. (*Id.* ¶ 13.) Plaintiff agreed. (*Id.*) When he arrived, he met for the first time with Agent Stelly. (*Id.*) Agent Stelly accused Plaintiff of sending the TSA email from a hotel in Atlanta and threatened to charge Plaintiff with a criminal offense if he did not admit to doing so. (*Id.*) Agent Skinner then asked Plaintiff to take a polygraph examination. (*Id.* ¶ 14.) Plaintiff agreed, but he did not otherwise consent to any questioning or interrogation. (*Id.* ¶¶ 14–15.) Plaintiff was then "taken to a room in the back of the building for [the] polygraph." (*Id.*) Before the examination began, Plaintiff was told[5] that "if he admit[ted] that he created an email account and sent an email to [the] TSA, he [would] not have to go through anything." (*Id.* ¶ 15.)

Agent Wetmore conducted the polygraph examination, during which he continued to question Plaintiff about the TSA email. (*Id.* ¶¶ 16–17.) Plaintiff denied having sent it. (*See id.* ¶¶ 18–19.) When the examination was complete, Plaintiff asked if he could leave. (*Id.* ¶ 18.) Agent Wetmore did not answer Plaintiff's question; instead, he told Plaintiff that he had failed the polygraph examination and that Plaintiff should admit to creating the email address used to send the TSA email and to posting on TSA websites using a falsified IP address. (*Id.*) When Plaintiff again refused to admit to Agent Wetmore's

---

[4] Though the contents of the email—which may actually have been a post made to the Department of Homeland Security website—are unclear, the FBI represented that sending it was a criminal act, and Plaintiff at least initially believed the FBI's interest in the email was related to national security. (*See id.* ¶¶ 43–45.)

[5] Plaintiff does not specify who told him this.

allegations, Wetmore "started yelling and screaming [and] subjected Plaintiff to enhanced interrogation technique[s] known as stress position and submission position."[6] (*Id.* ¶ 19.) Wetmore also made graphic sexual remarks about the women in Plaintiff's family, called Plaintiff a "Bad Muslim," and threatened to charge him with a criminal offense. (*Id.* ¶ 20.) Despite Plaintiff's protests, Agent Wetmore continually refused to end the interrogation. (*Id.* ¶ 21.) Plaintiff was never given a restroom break, and his "physical movement on [his] chair was restricted[7] resulting in pressure on [his] back and neck muscles." (*Id.*) "Due to increased physical and mental pain," Plaintiff eventually asked if he was required to say that he sent the email. (*Id.* ¶ 23.) Wetmore ignored the question. (*Id.*) When Plaintiff began to lose consciousness from the pain and tension of the situation, Wetmore would "flash" emails and other papers "on [Plaintiff's] face." (*Id.* ¶ 24.)

During the interrogation, Agents Eubank, Stelly, and Skinner were present but did not intervene. (*Id.* ¶ 25.) Once the interrogation was completed, the agents got general information from Plaintiff, including his age, address, and the type car he drives. (*Id.*) They then walked him back to the front of the building and released him. (*Id.*) The incident lasted for over six hours. (*Id.* ¶¶ 25, 27.)

Based upon information collected during the interrogation, FBI agents began

---

[6] Plaintiff never clarifies what he means by "stress position and submission position." He has attached to the Third Amended Complaint documents apparently related to a 2002 request from the Department of Defense Joint Task Force at Guantanamo Bay, Cuba, for approval to use various interrogation techniques, one of which is "the use of stress-positions (like standing), for a maximum of four hours." (Doc. 68-1, p. 2.) Plaintiff's exhibit characterizes stress positions as "forcing an individual to stand, sit, or kneel in abnormal positions for prolonged periods of time" (*id.* at 9 n.40) in order to "create a distracting pressure" and "to humiliate or insult" (*id.* at 8).

[7] Plaintiff never alleges his movement was restricted due to any type of physical restraint.

conducting warrantless electronic surveillance of Plaintiff at his home. (*See id.* ¶¶ 39–42.) The agents monitored Plaintiff's personal and business phone conversations, emails, and text messages. (*Id.* ¶ 40.) Plaintiff alleges that the agents additionally used his "personal phone . . . as a transmitter which permitted recordings anytime anywhere Plaintiff was present." (*Id.* ¶ 41.) The surveillance lasted until January 2011, and agents confirmed that the information collected included the structure and contents of Plaintiff's house, the content of his personal and business calls, and his travel information. (*Id.* ¶ 40.)

Plaintiff specifically alleges that on February 8, 2009, the "FBI recorded the prayer ('Salah') from the privacy of [his] home . . . and stored it in the form of an audio recording" without his consent. (*Id.* ¶ 31.) Two days later, Agents Eubank and Skinner called Plaintiff again and asked him to return to their office, which he did. (*Id.* ¶ 32.) There, they accused Plaintiff of immigration fraud, threatened to take away his citizenship and deport him, and "made threats that Plaintiff will not have to worry about being killed [by an] incoming car if [he] complies with their demands." (*Id.* ¶¶ 33–34.) They also accused Plaintiff of being "guilty based on [the] prayer recording" and made "racist statements" such as telling him that a judge would not like him if he took the FBI to court. (*Id.* ¶ 35.) Plaintiff again refused to comply with the agents' demands[8] and left. (*Id.*) The next day, Agent Eubank called Plaintiff and told him that the FBI was not going to leave him alone and that Plaintiff would not be able to work and support his family. (*Id.* ¶ 37.)

Plaintiff alleges that the FBI agents knew before he had ever visited the FBI office that Plaintiff had not sent the TSA email and that he was in no way related to any known or "imminent terrorist threat," but they nevertheless used those allegations as a pretense

---

[8] Plaintiff does not allege what the FBI demanded during this exchange.

to interrogate Plaintiff and investigate his motives behind approaching the FBI in the first place. (*See id.* ¶¶ 28–29.) Ultimately, Plaintiff contends that the FBI intentionally inflicted physical and psychological pain upon him, which caused him to lose weight, to be "unable to sit straight because of constant back pain," and to feel humiliation, embarrassment, and stress so severe that he was having panic attacks and contemplating suicide. (*Id.* ¶ 46.) Moreover, Plaintiff avers that his continual neck and back pain, as well as the "constant stress of either getting killed or charged," contributed to him losing his job as an information technology professional, which, in turn, led to his bankruptcy. (*Id.* ¶ 47.)

Based on these allegations, Plaintiff brings five claims against the individual Defendants. In Count V, Plaintiff alleges that Defendants violated the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1810, by using electronic surveillance devices to monitor him and his family. (*See id.* ¶¶ 83–85.) In Counts VI–IX, Plaintiff brings *Bivens*[9] claims, alleging that Defendants violated his Fourth Amendment right to be free from excessive force (*id.* ¶¶ 86–89), his Fifth Amendment right to equal protection (*id.* ¶¶ 90–92), his Fourth Amendment right to be free from unreasonable searches (*id.* ¶¶ 93–95), and his Fifth Amendment right to substantive due process (*id.* ¶¶ 96–100). Defendants move to dismiss for failure to state a claim. (*See* Doc. 89.) They also argue that they are entitled to qualified immunity. (*See id.*) Plaintiff opposes. (Doc. 96.) The matter is now ripe for the Court's adjudication.

---

[9] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971) (holding that the violation of certain constitutional rights by a federal agent acting under color of his authority gives rise to an implied cause of action against the agent for damages).

## STANDARDS

### I.      Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alterations and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

### II.     Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A public official who asserts a defense of qualified immunity must establish that he was engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) (citation and internal quotation marks omitted). Once an official makes a "discretionary function" showing, the burden of proof shifts to the plaintiff to: (1) factually

allege the deprivation of a constitutional right; and (2) demonstrate that the right was clearly established at the time of the violation. *See id.* The inquiry is fluid, meaning courts may address the latter two issues in any order. *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). Courts decide whether the state of the law is clearly established "in light of the specific context of the case, not as a broad general proposition." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1269 (11th Cir. 2003).

The U.S. Supreme Court has "urged [courts] to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only." *Epps*, 492 F.3d at 1243 (citation omitted). "Within the context of a Rule 12(b)(6) motion, as there is no record beyond the complaint, the well-pleaded factual allegations in the plaintiff's complaint are the focus of the determinations." *Id.* "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

## DISCUSSION

### I.   Motion to Dismiss

#### A.   Count V—FISA

In Count V, Plaintiff alleges that Defendants violated the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1810, by using electronic surveillance devices to monitor him and his family. (*See* Doc. 68, ¶¶ 83–85.) In a previous iteration of Plaintiff's Complaint (Doc. 18, ¶¶ 42–43), the Court dismissed this claim with prejudice for failure to first exhaust the administrative remedies required under 18 U.S.C. § 2712(b). (*See* Doc. 41,

p. 12 (citing *Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008)).) Nevertheless, Plaintiff continues to assert this claim in each successive complaint. (*See* Doc. 45, ¶¶ 43–44; Doc. 68, ¶¶ 83–85.) For the same reasons previously addressed, Plaintiff's FISA claim remains dismissed with prejudice.

### B.     Count VI—Excessive Force

Plaintiff asserts a *Bivens* claim in Count VI, alleging that Defendants used "excessive force[] to question Plaintiff about his religion, personal and private life." (Doc. 68, ¶ 89.) Specifically, Plaintiff asserts that, during the Course of the December 7, 2008, interrogation and polygraph examination, Defendant Wetmore "subjected [him] to enhanced interrogation technique[s] known as stress position and submission position." (*Id.* ¶ 19; *see also* Doc. 96, p. 11.) Plaintiff further alleges that, "to keep [him] alert Mr. Wetmore multiple times used email and other papers to flash on [his] face," and that Defendants Eubank, Stelly, and Skinner were present but declined to intervene. (Doc. 68, ¶¶ 24–25.) Defendants' actions, according to Plaintiff, caused "physical and mental pain" for which he had to take over-the-counter medications. (*Id.* ¶¶ 23, 30.)

Excessive force claims require the Court to first identify the specific constitutional right allegedly infringed by the challenged application of force. *See Graham v. Connor*, 490 U.S. 386, 394 n.9 (1989). Here, Plaintiff claims that Defendants' use of excessive force infringed upon his Fourth Amendment rights. (*See* Doc. 68, ¶ 89.) "To assert a Fourth Amendment claim based on the use of excessive force, the [Plaintiff] must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Troupe v. Sarasota Cnty.*, 419 F.3d 1160, 1166 (11th Cir. 2005). Whether force is reasonable is an objective inquiry, judged from the perspective of a reasonable

officer in light of the facts and circumstances presented to the defendant at the time the force was applied. *See Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (citing *Graham*, 490 U.S. at 396).

Plaintiff's claim fails because he has not adequately pled that any Defendant applied unreasonable force to him. Plaintiff's allegation that Agent Wetmore subjected him to "enhanced interrogation techniques" is conclusory; as Plaintiff's own exhibits indicate, that term encompasses a broad spectrum of conduct, most of which is innocuous if not applied continuously over a prolonged period. (*See* Doc. 68-1, pp. 2, 8 (explaining that "stress positions" include sitting, standing, and kneeling).) Plaintiff never indicates how he was subjected to a stress position or whether any Defendant used force of any kind to place him in it. (*See* Doc. 68, ¶ 19.) Without more specific factual support, the Court cannot accept Plaintiff's "enhanced interrogation technique" allegations as true. *See Twombly*, 550 U.S. at 545. Additionally, Plaintiff's allegations that Defendants caused him pain requiring medication speak only to the result of the alleged use of force and shed no light on the actual force used. (*See* Doc. 68, ¶¶ 23, 30.) Likewise, the most plausible reading of the allegation that Agent Wetmore "used email and other papers to flash on [Plaintiff's] face" is that Agent Wetmore flashed the print-outs in front of—not onto—Plaintiff's face whenever he began to lose focus.[10] Thus, with no force alleged, Plaintiff's

---

[10] Even if Agent Wetmore had made contact with Plaintiff as he "flashed" the emails, he would be entitled to qualified immunity because Plaintiff has not presented any case or other support demonstrating that such minimal contact is a violation of a clearly established right under Plaintiff's circumstances. *See Epps*, 492 F.3d at 1243. To the contrary, all of Plaintiff's cases involve force that is substantially more intense. *See Galvez v. Bruce*, 552 F.3d 1238, 1243–44 (11th Cir. 2008) (involving an arrestee being slammed into a concrete structure); *Reese v. Herbert*, 527 F.3d 1253, 1273–74 (11th Cir. 2008) (involving an arrestee who was beaten, had his arm twisted, had a pressure-point technique applied to him, and was pepper sprayed); *Hadley v. Gutierrez*, 526 F.3d 1324,

excessive force claim must fail.

Plaintiff counters that Defendants had no right to detain him, and "even *de minimis* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." (Doc. 96, p. 11 (quoting *Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008) (internal quotation marks omitted)).) This principle, however, applies only where a plaintiff adequately pleads a discrete excessive force claim—that is, a claim that an officer applied some quantum of force during the course of an arrest, and that quantum of force was excessive given the circumstances. *See Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1331–33 (11th Cir. 2006). By contrast, where a plaintiff does not allege a discrete use of force, but rather relies solely on the officer's lack of a right to make an arrest, the plaintiff states only an unlawful arrest claim, not an excessive force claim. *See id.* (citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995)) ("We reiterate, where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim."). Therefore, Plaintiff's failure to adequately allege a discrete use of force is fatal to his excessive force claim, and Count VI is due to be dismissed.

### C.      Count VII—Equal Protection

In Count VII, Plaintiff alleges that Defendants violated his Fifth Amendment right to equal protection by subjecting him to religiously motivated "harsh treatment not

---

1330 (11th Cir. 2008) (involving an arrestee who was punched in the stomach while handcuffed); *Lee v. Ferrero*, 284 F.3d 1188, 1998 (11th Cir. 2002) (involving slamming an arrestee into the hood of a car); *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000) (involving a police officer who commanded his K-9 to bite the unresisting plaintiff for over two minutes).

accorded to similarly situated citizens." (Doc. 68, ¶¶ 91–92.) This treatment included verbally abusing Plaintiff (by calling Plaintiff a "bad Muslim" and making sexual remarks about the women in his family), remotely recording prayers he made from the privacy of his home, and falsely accusing him of committing crimes. (Doc. 96, p. 13.)

First, Plaintiff's claims that the Defendants subjected him to religiously motivated verbal abuse do not, standing alone, state a claim for an equal protection violation. "The question in the equal protection context . . . is not just whether [a defendant's] conduct is [discriminatorily] motivated but also whether that action deprives a person of "equal protection of the laws." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999). Thus, an agent's use of racially denigrating language, including racial or religious epithets, does not rise to the level of an equal protection violation unless it is accompanied by harassment or some other misconduct that deprives the victim of established rights.[11] *See Brims v. Barlow*, 441 F. App'x 674, 678 (11th Cir. 2011) (citing *Williams*, 180 F.3d at 706).

Second, to state a *Bivens* claim for invidious, purposeful discrimination, a "plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676. This means that a defendant must "undertak[e] a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Id.* at 676–77 (citation and internal quotation marks omitted). Accordingly, for Plaintiff's prayer-recording and false-accusation equal protection claims to survive, Plaintiff must plead sufficient factual matter to demonstrate that Defendants conducted surveillance on

---

[11] This is not to say that courts condone the use of such "rancid and denigrating" language. *See Williams*, 180 F.3d at 706 (collecting cases).

Plaintiff "not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *See Iqbal*, 556 U.S. at 677.

By this standard, Plaintiff's equal protection claim fails. While the Defendants' interest in Plaintiff's personal and religious background is a common theme in Plaintiff's Third Amended Complaint (*see* Doc. 68, ¶¶ 11, 20, 22, 25–26, 31, 35), it pales in comparison to their interest in his "concerns" related to a "planned attack," his knowledge of the TSA email, and his alleged immigration offenses (*see id.* ¶¶ 10, 12–14, 16, 18–20, 23–24, 28, 32–34, 43–44). Likewise, while Defendants' alleged electronic recording of Plaintiff's prayers is conceivably consistent with sophisticated and purposeful religious discrimination, it is also consistent with conducting a neutral criminal investigation. "As between the obvious alternative explanation" for Defendants' alleged surveillance and criminal accusations "and the purposeful, invidious discrimination [Plaintiff] asks [the Court] to infer, discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. Accordingly, like the plaintiff in *Iqbal*, Plaintiff "would need to allege more by way of factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id.* at 683 (citing *Twombly*, 550 U.S. at 570). Count VII is therefore due to be dismissed.

### D.    Count VIII–Unreasonable Searches

Plaintiff's *Bivens* claim in Count VIII alleges that Defendants violated his Fourth Amendment right to be free from unreasonable searches by monitoring and recording his private conversations. (Doc. 68, ¶¶ 93–95.) Plaintiff specifically alleges that, from February 2009[12] through January 2011, Defendants conducted warrantless surveillance

---

[12] Plaintiff specifically alleges that at least one prayer recording occurred on

of him and his family by using electronic devices, including his own cell phone, to record emails, conversations, and prayers that took place in the privacy of Plaintiff's home. (*Id.* ¶¶ 31, 39–42.) Defendants respond that no *Bivens* remedy is available to victims of warrantless surveillance (Doc. 89, pp. 17–19) and, even if it were, Plaintiff has failed to state a claim (*id.* at 20–21) and the Defendants are entitled to qualified immunity (*id.*). The Court disagrees.

The U.S. Supreme Court confirmed in *Bivens* itself that the Fourth Amendment provides an implied a cause of action against federal officers for damages arising out of warrantless searches. *See Bivens*, 403 U.S. at 389–90. Electronic surveillance of private conversations constitutes a search for Fourth Amendment purposes. *See, e.g.*, *Katz v. United States*, 389 U.S. 347, 353 (1967). Warrantless electronic surveillance therefore violates the Fourth Amendment—even in cases involving domestic threats to national security. *See United States v. U.S. Dist. Court (Keith)*, 407 U.S. 297, 323–24 (1972); *see also Mitchell v. Forsyth*, 472 U.S. 511, 534 (1985) (observing that "*Keith* finally laid to rest the notion that warrantless wiretapping is permissible in cases involving domestic threats to national security"). Accordingly, the objects of unlawful electronic surveillance are entitled to *Bivens* relief.[13]

Here, Plaintiff's allegations sufficiently state a constitutional violation. Plaintiff is

---

February 8, 2009. (*See* Doc. 68, ¶ 31.)

[13] Defendants' argument that the relief available under FISA and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, precludes *Bivens* relief for unconstitutional electronic surveillance is not well-taken. (*See* Doc. 89, pp. 17–19.) These considerations would be significant if the Court were recognizing for the first time in this context a "new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The availability of *Bivens* relief for unreasonable searches, however, is well-established, and Defendant presents no cases indicating that FISA or the FTCA carve out an exception for electronic surveillance.

entitled to a reasonable expectation of privacy in conversations and religion practices conducted in his own home, and the alleged warrantless intrusion into that privacy violates the Fourth Amendment. *See Kyllo v. United States*, 552 U.S. 27, 31 (2001) (observing that, "with few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no"). Moreover, since at least 1972, the law has been clearly established that warrantless electronic surveillance of the type alleged by Plaintiff is impermissible. *See Forsyth*, 472 U.S. at 534 (determining that, for qualified immunity purposes, *Keith* clearly established that warrantless wiretaps—even those involving domestic threats to national security—are unconstitutional). Accordingly, Defendants are not entitled to qualified immunity.

Defendants' final argument regarding Plaintiff's unreasonable search claim is that it should be dismissed for failure to specify which Defendants performed the allegedly unreasonable searches. (*See* Doc. 89, pp. 9, 20 (citing *Nalls v. Bureau of Prisons*, 359 F. App'x 99, 101 (11th Cir. 2009)).) Here again, the Court disagrees. *Nalls* relies on the *Iqbal* proposition that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff never relies on vicarious liability; rather, he alleges that each of Defendant, acting in his individual capacity, engaged in unlawful surveillance. (*See* Doc. 68, ¶¶ 93–95.) Although he sometimes refers to Defendants collectively (*see, e.g.*, *id.* ¶ 40 (alleging that the "agents" confirmed surveillance occurred)), Plaintiff's *pro se* Complaint contains inferential factual allegations sufficient for Count VIII to proceed against Defendants Skinner, Wetmore, Eubank, and Stelly, all of whom had a demonstrated role in the FBI's

investigation. *See Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008) (directing courts to construe *pro se* complaints liberally in the face of a motion to dismiss); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (observing that inferential allegations suffice under Rule 8(a)). Defendants' motion to dismiss is therefore due to be denied as to Count VIII.

### E.    Count IX–Due Process

In his final *Bivens* claim, Plaintiff asserts that Defendants violated his Fifth Amendment right to substantive due process by: (1) designing scenarios to make Plaintiff fear for his life[14] and for the well-being of his family; and (2) asking Plaintiff irrelevant, offensive questions during the course of a custodial interrogation. (*See* Doc. 68, ¶¶ 96–100.)

This claim is best characterized as a coercive interrogation claim.[15] In this context, a "coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated." *Tinker v. Beasley*, 429 F.3d 1324, 1327 (11th Cir. 2005) (citing *Chavez v. Martinez*, 538 U.S. 760, 780 (2003)). "Such a violation will be recognized, however, only where the specific conduct alleged rises to a level of coercive interrogation that 'shocks the

---

[14] Plaintiff's fear for his life apparently stemmed from the alleged threat to hit him with a car. (*See* Doc. 96, p. 17.)

[15] Plaintiff also cites to *Apothecary Development Corp. v. City of Marco Island*, 517 F. App'x 890, 892 (11th Cir. 2013), for the proposition that Defendants' alleged conduct bankrupted him and therefore violated his constitutional right to lawfully earn a livelihood. (*See* Doc. 96, p. 17.) *Apothecary Development Corp.*, in which the defendants allegedly effectuated a "systematic police operation designed to harass" the plaintiff's customers and inhibit plaintiff's patronage, is readily distinguishable from this case, in which Plaintiff makes no factual allegations that Defendants intentionally interfered with Plaintiff's career. *See* 517 F. App'x at 892. To the extent that Count IX alleges a substantive due process business-interference claim, it therefore fails.

conscience.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Significantly, a substantive due process challenge requires an objective inquiry; the Court

"looks at the objective unreasonableness of the officers' conduct" to determine whether it

shocks the conscience. *Id.* at 1328. By contrast, procedural due process challenges to

interrogations—which typically arise in the context of a coerced confession—are

subjective; they look to the state of mind of the suspect and turn on whether the suspect's

will was overborne by the totality of the circumstances. *See id.* (citing *Schneckloth v.

Bustamonte*, 412 U.S. 218, 226 (1973)).

Plaintiff's coercive interrogation claim fails. Because Plaintiff alleges a substantive

due process violation, the Court's focus is on Defendants' conduct, not its subjective

effect on Plaintiff. *See id.* "Only the most egregious official conduct" amounts to a

substantive due process violation. *See Lewis*, 523 U.S. at 846. Defendants' alleged verbal

abuse and the isolated threat that Plaintiff would be hit by a car, though certainly

"untoward and upsetting," do not shock the conscience in the constitutional sense. *Cf.

Tinker*, 429 F.3d at 1329 (determining that a police interrogation did not shock the

conscience where, over the course of several days, police falsely informed her that her

lawyer had "bailed out" on her, indicated that they would interfere with her family

members' attempts to find a replacement lawyer, subjected her to a polygraph

examination, told her that she would never see her children again unless she confessed,

referred to her "sizzling" and "frying" in the electric chair, and pressured her through

references to her recently deceased mother); *Smith v. Campbell*, 295 F. App'x 314, 318–

19 (11th Cir. 2008) (finding that a verbally abusive six-to-eight hour interrogation of an

intoxicated, sleep-deprived suspect who was denied her anti-anxiety medication did not

shock the conscience). Moreover, even if the Court were persuaded that Defendants' conduct amounted to a substantive due process violation, Defendants were performing a discretionary function during the investigation. *See Williams v. Bauer*, 503 F. App'x 858, 860 (11th Cir. 2013) (observing that federal agents perform discretionary functions when they act pursuant to their job responsibilities, which include conducting investigations). As Plaintiff has failed to demonstrate that Defendants' conduct violated clearly established law,[16] Defendants are entitled to qualified immunity on this claim. Accordingly, Count IX is due to be dismissed.

* * *

In summary, Defendants' Motion to Dismiss (Doc. 89) is due to be denied as to Count VIII, which alleges that Defendants Skinner, Eubank, Wetmore, and Stelly violated Plaintff's Fourth Amendment right to be free from unreasonable searches. In all other respects, Defendants' Motion to Dismiss is due to be granted.

## II.   Motion for Sanctions

Plaintiff moves, pursuant to Federal Rules of Civil Procedure 16, 37, and 60, to vacate the Court's December 19, 2012, Order denying his motion to compel (Doc. 67) and to impose sanctions on Defendant Department of Justice ("DOJ"). (*See* Doc. 79.) This motion stems from Plaintiff's efforts to obtain the names of FBI agents who participated in the investigation. On November 13, 2012, Magistrate Judge Toomey

---

[16] The cases on which Plaintiff relies to support the proposition that threats can amount to a due process violation arise in the coerced confession context and are therefore inapposite to this substantive due process claim. *See, e.g.*, *Beecher v. Alabama*, 389 U.S. 35, 37–38 (1967) (holding that, where police ordered a defendant at gunpoint to "speak his guilt or be killed," the defendant's confession was involuntary and the subsequent conviction tainted by it violated due process).

ordered the DOJ to provide to Plaintiff "the identities of the unknown special agents of the FBI with whom Plaintiff interacted" so that he could "amend his complaint to include allegations against them if appropriate." (Doc. 60, p. 4.) In response, the DOJ sent Plaintiff a letter on November 27, 2012, identifying each agent[17] with whom Plaintiff personally interacted. (*See* Doc. 66-1.) Plaintiff then filed a motion to compel, arguing that Defendant's disclosures were incomplete because they did not include the identities of those agents who played a role in the FBI's investigation but with whom Plaintiff did not interact personally. (*See* Doc. 64.) On December 19, 2012, the Judge Toomey denied Plaintiff's motion to compel and determined that the DOJ's disclosure "fully complied" with its prior Order. (Doc. 67, p. 2.)

Pursuant to Rule 60 (b) and (d), Plaintiff moves for relief from the December 19, 2012, Order, arguing that the DOJ's representation that he only personally interacted with the named FBI agents constitutes fraud perpetrated upon the Court. (*See* Doc. 79, pp. 5–9.) Rule 60(b), however, permits a court to relieve a party only from a "final judgment, order, or proceeding." *See, e.g.*, *Voter Verified, Inc. v. Election Sys. & Software, Inc.*, No. 6:09-cv-1969-Orl-19KRS, 2011 WL 3862450, at *2 (M.D. Fla. Aug. 31, 2011). As final judgment has not yet been entered in this case, Rule 60(b) is inapplicable.[18] *See id.* By

---

[17] The letter identified six special agents, five male and one female. The five male agents identified were Meyer, Eubank, Skinner, Stelly, and Wetmore (*see* Doc. 66-1, pp. 2–3); they were all added as named Defendants to Plaintiff's Third Amended Complaint (*see* Doc. 68). Because Plaintiff apparently indicated that he did not wish to name the female agent as a defendant, the DOJ declined to reveal her name. (*See* Doc. 66-1, p. 2.)

[18] Plaintiff's motion would also be inappropriate under Federal Rule of Civil Procedure 54(b), which ordinarily permits review and revision of interlocutory orders. Courts in this Circuit recognize three grounds for reconsideration of prior orders under Rule 54(b): (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *See Fla. Coll. Of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308

the same token, Rule 60(d) is inapplicable, as it applies only to the Court's power to "set aside a judgment for fraud on the court."

Finally, as Magistrate Judge Toomey previously determined that Defendant's response did not constitute a discovery violation, sanctions pursuant to Federal Rules of Civil Procedure 16(f) and 37(b) are not appropriate. Thus, Plaintiff's motion is due to be denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.  Plaintiff's Opposed Motion for Relief Under Rule 60 and Motion for Sanctions Rule 37 and Memorandum in Support Thereof (Doc. 79) is **DENIED.**

2.  Individual Defendants' Dispositive Motion to Dismiss Plaintiff's Third Amended Complaint and Memorandum in Support Thereof (Doc. 89) is **GRANTED IN PART AND DENIED IN PART**.

3.  Defendants' Motion to Dismiss (Doc. 89) is **GRANTED** with respect to the following:

    a.  All claims against Defendant Nestor Duarte are **DISMISSED WITH PREJUDICE**.

    b.  Counts V, VI, VII, and IX are **DISMISSED WITH PREJUDICE**.

4.  In all other respects, Defendants' Motion to Dismiss (Doc. 89) is **DENIED**. Count VIII shall proceed against Defendants Jason C. Skinner, Brett A. Eubank, Terry M. Wetmore, and Paxton K. Stelly.

---

(M.D. Fla. 1998). Plaintiff's meritless allegations of fraud fail on all three grounds.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on January 14, 2014.


ROY B. DALTON JR.
United States District Judge


Copies:

Counsel of Record